```
             UNITED STATES DISTRICT COURT
                DISTRICT OF NEW JERSEY
```

   ANNAMARIE S.,

                        Plaintiff,    1:20-cv-14036-NLH

   v.                                 **OPINION**

   COMMISSIONER OF SOCIAL
   SECURITY,[1]

**APPEARANCES:**

JENNIFER LILLEY STONAGE
BROSS & FRANKEL
724 KENILWORTH AVE, SUITE 2
CHERRY HILL, NJ 08002

   *On behalf of Plaintiff*

EVELYN ROSE MARIE PROTANO
TIMOTHY PATRICK REILEY
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

   *On behalf of the Commissioner*

**HILLMAN**, District Judge

   This matter comes before the Court pursuant to Section

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.

205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[2] under Title II of the Social Security Act.  42 U.S.C. § 423, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, May 6, 2016.  For the reasons stated below, this Court will affirm that decision.

I.   BACKGROUND AND PROCEDURAL HISTORY

On March 7, 2017, Plaintiff filed an application for DIB, alleging that she became disabled on May 6, 2016.  Plaintiff claims that she can no longer work as a payroll supervisor, human resource assistant, payroll specialist, lead payroll specialist, human resource payroll benefits administrator, or accounting assistant, because of her impairments of lumbar and cervical degenerative disc disease, bilateral carpal tunnel syndrome, chronic pain syndrome, diabetes, hypothyroidism, mixed

---

[2] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

hyperlipidemia, hypotestosteronismsm,[3] and anxiety.[4]

Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested a hearing before an ALJ, which was held on April 18, 2019.  On August 6, 2019, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on August 5, 2020, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

**II.  DISCUSSION**

    **A.  Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means

---

[3] The ALJ's Opinion cites the condition as "hypotosteronism." That is clearly a typographical error as references to the underlying medical records make clear.  (R. at 1068).

[4] On application date of March 7, 2017, Plaintiff was 53 years old, which is defined as a "person closely approaching advanced age" (age 50-54).  20 C.F.R. § 404.1563.

more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all the non-

4

medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the factfinder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

5

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.    Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

    1.    If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

6

>   2.  If the claimant does not suffer from a "severe impairment," she will be found "not disabled."
>
>   3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."
>
>   4.  If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."
>
>   5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy. If she is incapable, she will be found "disabled." If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."

Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 6, 2016, Plaintiff's alleged onset date. At step two, the ALJ found that Plaintiff's impairments of lumbar and cervical degenerative disc disease, bilateral carpal tunnel syndrome, chronic pain syndrome, diabetes, and hypothyroidism were severe. The ALJ also determined that the impairments of mixed hyperlipidemia and hypotestosteronism, and anxiety were not severe. At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments.

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform work at the sedentary level,[5] with certain exertional restrictions. At steps four and five, the ALJ determined that based on Plaintiff's RFC, she was able to perform her past relevant work of payroll supervisor, human resources administrator manager, and human resources assistant. The ALJ therefore concluded that Plaintiff was not

---

[5] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

8

disabled.

Plaintiff argues that the ALJ erred in her decision because she improperly discounted the medical opinions of certain of her doctors and healthcare providers, failed to assign limitations consistent with Plaintiff's limitations in using her upper extremities, finding her anxiety non-severe and thereafter failing to include her anxiety in her RFC.  (ECF 13 at 1).

Plaintiff mischaracterizes the ALJ's opinion.  With respect to her first assignment of error, Plaintiff argues that the ALJ improperly discounted the medical opinions of her treating physicians and medical providers, including Dr. Steven McGrath, Murray Buck, DO, Thomas Bertini, PT, and Gregory Bader DO on the basis that the ALJ simply stated that opinions of disability are reserved to the Commissioner.  (Id. at 14-19).  The ALJ acknowledged that the regulations at the time Plaintiff filed her claim required her to give controlling weight to the medical opinions of Plaintiff's treating physicians provided that the opinions met certain requirements.[6]  (R. at 25).  The Third Circuit in Farngoli explained, "Where a treating source's opinion on the nature and severity of a claimant's impairment is well-supported by medically acceptable clinical and laboratory

---

[6] The regulations were amended for various provisions effective March 27, 2017, including for the "treating physician rule." See 82 F.R. 5844.  The parties agree that the regulation in place prior to the amendment controls Plaintiff's claim.

9

diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record, it will be given controlling weight." Fargnoli, 247 F.3d at 43 (internal alternations and quotation marks omitted).

Here, the ALJ explained that she discounted the opinions of Plaintiff's treating physicians because they were vague, not supported by medically acceptable techniques, and conclusory. (R. at 25-27); Miller v. Astrue, No. 02:11-CV-1307, 2012 WL 2370424, at *8 (W.D. Pa. June 22, 2012) ("[A]n ALJ may reject the view of a treating physician if it is in the form of an unsupported, conclusory opinion."). In addition, the ALJ was not required to look with deference on the opinions of Dr. Bertini, a physical therapist, and Dr. Bader, a chiropractor, as they were not acceptable medical sources entitled to controlling weight. Jones v. Colvin, No. CIV.A. 13-4831, 2014 WL 2862245, at *11 (E.D. Pa. June 24, 2014) ("Although statements from a physical therapist may be considered as additional evidence, they are not entitled to controlling weight."); Gonzalez v. Saul, No. 2:18-CV-3335, 2021 WL 389355, at *5 (D.N.J. Feb. 4, 2021) ("[A] chiropractor is not an acceptable medical source entitled to controlling weight.") (internal quotation marks omitted). Nevertheless, the ALJ still considered their opinions and explained that they were afforded little weight due to enumerated vague or conclusory assertions. (R. at 27). The

10

Court discerns no error in the ALJ's analysis of the opinions of Plaintiff's treating physicians and medical providers.

Plaintiff's next argument is that the ALJ did not include limitations in her use of her upper extremities, particularly in reaching, when arriving at an RFC. (ECF 13 at 19-21). The ALJ's decision suggests otherwise. In the RFC analysis, the ALJ cites to medical evidence by doctors opining that Plaintiff "had good use of her upper extremities for movements such as reaching[.]" (R. at 27). As stated above, the ALJ adequately explained why she rejected medical opinion evidence to the contrary – because it was vague and conclusory. Burnett, 220 F.3d at 122 (explaining the ALJ's responsibility to weigh all of the medical evidence and explain her conclusions).[7] Given the

---

[7] To the extent that Plaintiff argues that the ALJ erred because the vocational expert (the "VE") opined in one hypothetical that reaching limitations would preclude Plaintiff's prior employment, that arguments is a red herring. The ALJ only must accept the VE's recommendations when they accurately reflect the claimant's limitations. Harris v. Astrue, 886 F. Supp. 2d 416, 426 (D. Del. 2012) ("The ALJ was not required to accept the VE's testimony that Harris' subjective complaints, if fully credible, would preclude employment because, as discussed, those complaints were not supported by the evidence as a whole."); Bartmas v. Colvin, No. CV 15-854, 2016 WL 3197973, at *4 (W.D. Pa. June 9, 2016) ("An ALJ is only required to accept the VE's responses to hypothetical questions that accurately reflect a claimant's impairments."). Here, the ALJ thoroughly discussed Plaintiff's subjective complaints and medical records relating to Plaintiff's upper extremities and did not find a limitation with respect to reaching. (R. at 21). Indeed, she posed a separate hypothetical to the VE with that fact pattern. (Id. at 76-77).

11

ALJ's careful explanation of how she arrived at the RFC, the Court is not prepared to say that the ALJ's determination was not supported by substantial evidence. Williams, 970 F.2d at 1182.

Plaintiff's final argument is that the ALJ improperly found her anxiety to be non-severe at step two and then compounded the error by failing to incorporate the limitations posed by her anxiety in the RFC. (ECF 13 at 21-23). At step two, a claimant has the burden to show that she had "(1) a medically determinable impairment shown by medically acceptable clinical and laboratory diagnostic techniques (2) that meets the duration requirement and (3) which significantly limited [her] ability to perform basic work activities." Carter v. Comm'r Soc. Sec., 805 F. App'x 140, 142 (3d Cir. 2020). At step two, the ALJ enumerated the four areas of mental functioning that she considered when classifying Plaintiff's anxiety as non-severe and explained that she found the anxiety only left Plaintiff with a "mild impairment" and thus did not significantly limit her ability to do work activities. (R. at 18-19). It is not clear where in that analysis Plaintiff claims the ALJ erred, given that the ALJ clearly outlined her analysis on the record.

Further, the ALJ's decision does address Plaintiff's anxiety in the RFC. The ALJ specifically stated "the following residual functional capacity assessment reflects the degree of

12

limitation the undersigned has found in the 'paragraph B' mental function analysis." (Id. at 19).  The RFC analysis also explicitly mentions Plaintiff's anxiety in the context of considering Plaintiff's statements about her anxiety regarding driving.  (Id. at 22).  Given that the ALJ's consideration of Plaintiff's anxiety is referenced in the RFC, the ALJ was not required to reiterate every tidbit of evidence relating to it in arriving at the RFC.  Hur, 94 F. App'x at 133.  Thus, the Court finds no error in the ALJ's treatment of Plaintiff's anxiety in the RFC analysis.

### III. Conclusion

For the reasons expressed above, the decision of the ALJ was supported by substantial evidence and must be affirmed.

An accompanying Order will be issued.


Date: July 5, 2022                         s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.